IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES ZOROMSKI,

                       Plaintiff,                 OPINION AND ORDER

   v.

                                          07-cv-463-jcs

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Because Judge Shabaz will be convalescing from shoulder surgery for a period of not less than sixty days beginning February 1, 2008, I have assumed administration of the cases previously assigned to him, including this one.

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff James Zoromski seeks reversal of the commissioner's decision that he is not disabled and therefore ineligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d). Plaintiff contends that the decision of the administrative law judge who denied his claim is not supported by substantial evidence because the judge made a flawed credibility finding, failed to properly consider whether plaintiff met or equaled the

listing contained in the List of Impairments, § 1.04, failed to consider all of plaintiff's impairments as a whole in determining his residual functional capacity and failed to properly evaluate his claim under Social Security Ruling 83-20. In the alternative, plaintiff seeks a remand under sentence six for consideration of additional evidence.

I find that because the administrative law judge built an accurate and logical bridge between the evidence and his conclusion that plaintiff's testimony of his limitations was not credible, his credibility determination was not patently wrong. I also find that the administrative law judge properly concluded that plaintiff's back condition did not meet the criteria of § 1.04 of the listings and that he considered all of plaintiff's impairments in determining his residual functional capacity. Because the administrative law judge did not find that plaintiff was disabled, he did not have to determine an onset date pursuant to Social Security Ruling 83-20.

For these reasons, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision. I am also denying plaintiff's motion for a sentence six remand because the additional evidence submitted by plaintiff is not material.

The following facts are drawn from the administrative record (AR):

2

FACTS

A.  Background and Procedural History

Plaintiff applied for Social Security Disability Insurance Benefits on January 30, 2003, alleging that he had been unable to work since January 1, 1994 because of back and neck injuries and limited use of his left shoulder because of bursitis.  AR 115.  Plaintiff graduated from high school, completed some college courses and worked as a probation officer for ten years until 1990.  AR 44.  The last date on which plaintiff was insured for disability benefits was December 31, 1996.  AR 40.

After the local disability agency denied his application initially and upon reconsideration, plaintiff requested a hearing, which was held on July 25, 2006 before Administrative Law Judge Emanuel Poverstein in Wausau, Wisconsin.  Plaintiff was 63 years old on the date of the hearing.  The administrative law judge heard testimony from plaintiff, who was represented by a lawyer.  AR 747.  On August 25, 2006, the administrative law judge issued his decision, finding plaintiff not disabled from his alleged onset date of January 1, 1994 through the expiration of his disability insurance on December 31, 1996.  AR 40-47. This decision became the final decision of the commissioner on June 19, 2007, when the Appeals Council denied plaintiff's request for review.  AR 4-6.

B.  <u>Medical Evidence</u>

1.  <u>Records prior to plaintiff's last insured date</u>

Plaintiff injured his neck while serving with the marines in Vietnam and reinjured it in 1977 when he was stationed at Fort Leavenworth.  In November 1988 plaintiff had cervical fusion surgery for this injury.  AR 254.  On April 10, 1990, plaintiff reported to Dr. John A. Campbell at the Marshfield Clinic that his neck and back pain had improved after the surgery. AR 254.    Dr. Campbell examined plaintiff and indicated that plaintiff's conditions included obesity, post cervical spinal fusion in November 1988, status post lumbar discectomy in 1973 and chronic hydradenitis (inflammation of the sweat glands) of the groin bilaterally.  AR 253.  Dr. Campbell found that plaintiff had no tenderness on percussion of his spine and was neurologically intact.  AR 255.

Plaintiff asked Dr. Campbell to complete a truck driver's examination form for him. Dr. Campbell advised plaintiff that truck driving might cause plaintiff increased back discomfort but plaintiff told the doctor that he wanted to be a truck driver because his work as a probation officer was too stressful.  AR 253.

Dr. Campbell also examined plaintiff on March 4, 1992 for the truck driver's examination.  Plaintiff reported that he was feeling well and had no new complaints.  At that time Dr. Campbell noted that plaintiff did not have diabetes.  AR 251.

On January 5, 1995, Dr. Campbell examined plaintiff and evaluated his chronic hydradenitis.  AR 242-244.  On January 6, 1995, Dr. Patrick Chen recommended that plaintiff have surgery for this condition.  On January 26, 1995, Dr. Chen performed surgery to remove plaintiff's affected tissue.  Plaintiff was hospitalized until January 31, 1995.  AR 241.

On February 24, 1995, Dr. Campbell examined plaintiff for symptoms of pedal edema.  Dr. Campbell recommended weight reduction and decreased salt intake and prescribed Triamterene and Hydrochlorothiazide.  AR 230.  In March 1995, Dr. Campbell saw plaintiff and noted that his wounds from the surgery were healing well.  AR 226.  Dr. Campbell discontinued plaintiff's prescription of Triamterene because it was causing his hands and fingers to swell and itch.  AR 706.  On June 2, 1995, Dr. Campbell saw plaintiff for surgery follow-up.  Plaintiff reported that he was feeling wonderful.  AR 222.  On September 13, 1995, plaintiff saw Dr. Chen for a surgery follow-up appointment.  Dr. Chen noted that plaintiff was happy with the results of the surgery and wanted to have the remaining affected tissue removed.  AR 221.

2.  Records after plaintiff's last insured date

In early 2001 plaintiff fell on the ice and experienced more back and neck pain.  On February 6, 2001, plaintiff saw chiropractor Mark Brickley for treatments of his neck and

lower back pain.  AR 206.  Plaintiff continued these treatments until January 17, 2003. AR 150.

In November 2001, Francine Vriesendorp, M.D., evaluated plaintiff for complaints of bilateral leg weakness.  AR 179-181.  She noted that plaintiff had been able to walk normally until he fell on the ice in early 2001.  AR 179.  Dr. Vriesendorp concluded that plaintiff had cervical myelopathy with persistent leg weakness, severe cord compression at C3-4 and moderate lumbar stenosis at L3-4.  AR 181, 183.  She noted that plaintiff would need surgery for spinal cord compression.  AR 181.  Plaintiff told Dr. Vrisendorp that he and his wife were quite active in the business of selling propylene nylon horse and dog collars as well as magnet therapy.  AR 180.

In 2002 plaintiff underwent treatment at the Veterans Administration Health Care Facility in Tomah, Wisconsin.  AR 278.  An x-ray of plaintiff's lumbar spine showed advanced degenerative changes at L4-5, minimal disc space narrowing at L3-L4, very minimal Grade I anterior spondylolisthesis of L3 upon L4 and possible scoliosis.  AR 279.  Plaintiff was very obese and required a cane to balance himself.  AR 282.

On July 10, 2003, the Department of Veterans Affairs found plaintiff had a 60 percent disability beginning October 1, 2001 based on diabetes and peripheral neuropathy in his lower extremities secondary to diabetes.  AR 89-90.  On September 30, 2003, the department revised that determination and found that plaintiff was unemployable as of

September 10, 2002 because of residuals of lumbar laminectomy, diabetes and peripheral neuropathy.  AR 87.

On August 8, 2003 Dr. Campbell responded to plaintiff's lawyer's request for a retrospective assessment of plaintiff's physical capacity as of 1996.  Dr. Campbell responded that, although he had seen plaintiff in 1995 for medical problems, the problems had not required a physical capacity evaluation.  He concluded that he was unable to provide the requested evaluation because he did not have the necessary data.  AR 364.

### C.   Consulting Physicians

On April 21, 2003, state agency consulting physician Dr. Michael Baumblatt assessed plaintiff's physical residual functional capacity as of his last insured date.  He noted that plaintiff had a spinal condition and hydradenitis.  He concluded that plaintiff could lift ten pounds frequently and twenty pounds occasionally.  He also concluded that plaintiff could stand or walk six hours in an eight hour work day and sit six hours in an eight hour work day.  AR 257-262.

On July 30, 2003, state agency physician Dr. Robert Callear made the same assessment of plaintiff's residual functional capacity.  He noted that plaintiff had status post cervical fusion, obesity and hydradenitis.  AR 264-271.

Dr. William Tansey, a third agency medical consultant, reviewed the residual functional capacity assessments of Drs. Baumblatt and Callear and agreed with them. He further stated that plaintiff had a history of cervical fusion in 1988 but that a January 1995 examination showed plaintiff had no motor weakness, bilaterally equal deep tendon reflexes and intact cerebella function. AR 272-274.

## D. Hearing Testimony

Plaintiff testified that he was in the military from 1960 until his final discharge in 1981. AR 751. The administrative law judge asked plaintiff to briefly describe the problems that he experienced that he believed made him disabled before December 31, 1996. Plaintiff testified that he believed he had been disabled since he was injured in 1977 when he was stationed at Fort Leavenworth. AR 751-752. Plaintiff further testified that he had worked as a probation officer for ten years but quit in 1991 because he was unable to tolerate the walking and steps required when visiting his clients. AR 752. He further testified that he had tried truck driving but could not do the lifting required to unload the truck. AR 752.

Plaintiff testified that he weighed 370 pounds at the time of the hearing but that he had weighed 300 pounds in 1994. AR 752. Plaintiff attributed some of his weight problems in 1994 to diabetes. AR 752. He testified that he had needed a cane to walk in 1996. AR 757. He further testified that he could walk only 100 to 200 feet in 1996. AR 756.

Plaintiff also testified that in 1996 he could lift ten pounds occasionally and five to ten pounds frequently.  AR 759.

At the close of the hearing the administrative law judge allowed plaintiff's lawyer one week to submit information concerning plaintiff's last insured date. AR 760.

### E. Post Hearing Submissions

On August 1, 2006, plaintiff's lawyer sent additional evidence to the administrative law judge at the Office of Hearings and Appeals, Albuquerque, New Mexico.  Aff. of Dana Duncan, ¶3, Exh. A.  Duncan submitted a September 11, 1986 CT scan of plaintiff's lumbrosacral spine showing degenerative disc disease at L4-5 and possible disc herniation posteriorly and an October 1986 CT scan that confirmed a herniated disc at C4-5 and compression of the thecal sac at C5-6 and 6-7.  AR 717-718.  He also submitted an October 1988 CT scan of plaintiff's cervical spine that showed a congenitally small cervical canal with significant disease at all levels but the most severe disease at C5-6, where plaintiff had severe compression on the cord.  AR720-721.  Duncan also submitted a September 13, 1995 doctor's note that had been included in the record before the administrative law judge.  AR 221.

Duncan might also have submitted medical records from Marshfield Clinic concerning the period from 1997 to 2001.  Affidavit of Dana Duncan, ¶5, Exhibit C.  The records show

plaintiff was injured in a December 1997 motor vehicle accident and that Dr. Thomas Faciszewski performed surgery on plaintiff's back in January 1998. Dr. Fasciszeswki noted in February 1998 that plaintiff's condition was significantly improved since the surgery. Id., at pp. 2, 22, 31 and 39. The records also show that Dr. Alan McKenzie saw plaintiff on March 28, 1997 for diabetes. He noted that plaintiff had been diagnosed with diabetes in February 1997. Id., at 11.

F.  The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis. See 20 C.F.R. § 404.1520. At step one he found that plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 1994 through his last date insured of December 31, 1996. At step two, he found that at the time plaintiff's disability insurance expired in 1996, he was severely impaired by status post cervical fusion, 1988; status post lumbar discectomy, 1973; obesity; and bilateral chronic groin hydradenitis, status post surgery, January 1995. The administrative law judge found that there was no evidence in the record that plaintiff had diabetes on or before December 31, 1996.

Relying on the opinions of state agency physicians and the evidence of record, the administrative law judge found at step three that plaintiff did not have a physical

10

impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  AR 43.

At step four, the administrative law judge assessed plaintiff's residual functional capacity during the relevant time period, taking into account plaintiff's subjective complaints regarding his symptoms and limitations, as well as the various medical opinions in the record.  The administrative law judge specifically addressed plaintiff's obesity.  He stated:

> While the undersigned has reviewed SSR 02-1p, which provides that obesity can cause limitation of function, which may depend on many factors, and be exertional or nonexertional in nature, the overall evidence of record fails to reflect that the claimant's obesity, in itself, or in combination with the other impairments, imposed disabling limitations.  On the contrary, the evidence documents that the claimant, in spite of his medical impairments, including obesity, engaged in activities that were consistent with light type work through the date last insured.

The administrative law judge determined that plaintiff had the residual functional capacity to perform work with the following limitations: lifting up to twenty pounds occasionally and ten pounds frequently; standing and walking for six hours in an eight-hour workday; sitting six hours in an eight-hour workday; and unlimited ability to push or pull, including operation of hand or foot controls, consistent with the lifting and carrying limitations.

11

The administrative law judge specifically addressed Social Security Ruling 83-20, which provides guidance on how to determine the onset date of a disability.  The judge stated that, "The claimant's testimony is essentially that since his 1988 cervical fusion he has been significantly limited."  The judge found that the medical record did not show that plaintiff had significant functional limitations from 1989 through September 1995.  He found that the medical evidence indicated no deterioration of plaintiff's musculoskeletal condition until 1998.  (The administrative law judge found that plaintiff was hurt in a fall in 1998; however, the record indicates plaintiff fell in 2001.)

The administrative law judge considered the Veterans Administration's finding that plaintiff was unemployable effective September 10, 2002.  He concluded that the decision by the Veteran's Administration reflected a disability finding well after the date of last insured and that there was no basis to relate this finding back to the date of plaintiff's insured status.

The administrative law judge considered plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms pursuant to Social Security Ruling 96-7p and concluded they were not entirely credible because they were contradicted by the medical evidence and contemporaneous statements made by plaintiff to treating physicians. The administrative law judge noted the following:

Plaintiff told Dr. Campbell on April 10, 1990 that he wanted to be a truck driver because he was no longer satisfied working as a probation officer due to increased job related stress.

On June 2, 1995, plaintiff reported to Dr. Campbell that he was feeling fine after his surgery for bilateral groin hydradenitis.

There was a sizable gap in the medical evidence from September 1995 until February 2001.

In November 2001, plaintiff told Dr. Vrisendorp that he and his wife were quite active in the business of selling propylene nylon horse and dog collars and also in magnet therapy.

In November 2001, Dr. Vrisendorp noted that plaintiff needed a cane to ambulate after his 2001 fall on the ice but that he had had no trouble walking before the fall.

Relying on the residual functional capacity assessments of the agency physicians, the administrative law judge found that plaintiff could perform his past relevant work because it did not require the performance of work-related activities precluded by his residual functional capacity.

The administrative law judge did not refer to the additional records that Duncan had sent on August 1, 2006 and the exhibit list did not include the records.

OPINION

A.  Standard of Review

13

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the commissioner. Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993). Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002). When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

As a corollary to the substantial evidence rule, the commissioner's findings must be derived from a fully developed record. Because a hearing before an administrative law judge

14

is not an adversary proceeding, the administrative law judge is responsible for ensuring that the record is fully and fairly developed as to issues that are material to the claimant's application.  Thompson v. Sullivan, 933 F.2d 581, 585 (7th Cir. 1991).

## B. Credibility Finding

Plaintiff challenges the administrative law judge's determination that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible.  An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility.  Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000). In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong."  Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006); Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").  However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result.  Shramek, 226 F.3d at 811.  The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record.  Skarbeck v. Barnhart, 390 F. 3d 500, 505 (7th Cir. 2004).

15

Plaintiff argues that the administrative law judge found plaintiff's testimony not credible only because of the gap in the medical evidence from September 1995 to February 2001.  (Plaintiff attempts to fill this gap by submitting records from this time period and asking the court to remand the case so the agency can consider these records.  Plaintiff's motion for remand will be addressed later in this opinion.)  The record indicates otherwise. The gap in the records was only one of several reasons cited by the administrative law judge for finding plaintiff's testimony concerning his limitations not fully credible.  The administrative law judge referred to specific doctor's notes where plaintiff reported that he had fully recovered from his back surgery and was happy with the success of the surgery to remove his hydradenitis.  The administrative law judge also considered the fact that after plaintiff quit his job as a probation officer, he was self-employed.  In addition, he listed inconsistencies between plaintiff's testimony and his statements to his treating doctors. Specifically, he found that plaintiff had told Dr. Campbell that he quit his job as a probation officer because of the stress but testified that it was because of his physical limitations; he told Dr. Vriesendorp that he had not used a cane to walk until after his fall in 2001 but testified at the hearing that he used a cane to walk in 1996; he told Dr. Vriesendorp that in 2001 he and his wife had a business selling horse and dog collars but testified that he was unable to work.  These inconsistencies called into question the veracity of plaintiff's claim

16

that he was incapable of performing any substantive gainful activity prior to December 1996.

Because the credibility finding is not patently wrong, I must affirm it.

### C. Listed Impairment

Plaintiff contends that the administrative law judge erred in finding that plaintiff's

back condition did not meet the listing for Disorders of the Spine, § 1.04.  This listing

requires the following

> A.   Evidence of nerve root compression, characterized by neuro-anatomic distribution of pain. Limitation of motion of the spine, motor loss, (atrophy with associated muscle weakness) accompanied by sensory or reflex loss, and if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

> C.   Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively as defined in § 1.00B2b.

Plaintiff has failed to show that he satisfies all of the requirements of either subsection

of the listing.  Maggard v. Apfel, 167 F.3d. 376, 379 (7th Cir. 1999)("To meet or equal a

listed impairment, the claimant must satisfy all of the criteria of the listed impairment.  The

claimant bears the burden of proving his condition meets or equals a listed impairment").

17

To meet Listing § 1.04(A), plaintiff would have to show atrophy with associated muscle weakness accompanied by sensory or reflex loss.  The medical records indicate that from 1994 to 1996, plaintiff had no atrophy or motor weakness.  Further, plaintiff had normal deep tendon reflexes with no evidence of ongoing sensory or reflex loss.  Plaintiff agrees that there was no evidence in the record of motor weakness or atrophy but argues that the administrative law judge should have contacted the medical source for more information.  However, "how much evidence to gather is a subject on which [the court] generally respect[s] the [commissioner's] reasoned judgment."  Luna v. Shalala, 22 F.3d 687, 692 (7th Cir. 1994). The record does not reflect any need for more information and plaintiff has not suggested that more information exists.  There was an adequate basis upon which the administrative law judge could conclude that plaintiff did not have a back condition that met the criteria of § 1.04(A).

To show that he met Listing § 1.04(C), plaintiff would have to provide an imaging study indicating spinal stenosis and prove his inability to walk effectively within the relevant time period.  According to plaintiff's comment to Dr. Vrisendorp in 2001, he did not begin using a cane to walk until 2001 and there is no evidence that plaintiff had spinal stenosis. This evidence substantially supports the administrative law judge's conclusion that plaintiff's back condition did not meet listing § 1.04(C).  The administrative law judge did not err in determining that plaintiff's back condition did not meet a listed impairment.

D. <u>Combination of Impairments</u>

Plaintiff contends that the administrative law judge did not consider plaintiff's obesity in combination with his other impairments. I disagree. The administrative law judge specifically considered plaintiff's obesity, finding that "the overall evidence of record fails to reflect that the claimant's obesity, in itself or in combination with the other impairments, imposed disabling limitations." The judge found that, on the contrary, the evidence showed that in spite of his medical impairments, *including* obesity, plaintiff was able to engage in activities "that were consistent with light type work through the date last insured."

In determining plaintiff's residual functional capacity, the administrative law judge considered the medical evidence concerning plaintiff's obesity, back injuries and hydradenitis. He also considered the decision of the Department of Veterans Affairs that plaintiff was unemployable as of September 10, 2002, but found that it was not relevant to the time period from 1994 to 1996. In arriving at his determination of plaintiff's residual functional capacity, the administrative law judge adopted the residual functional assessments of the agency physicians. Two of the agency physicians considered plaintiff's back condition, hydradenitis and obesity in combination, but found that he retained the residual functional capacity to perform light work. Thus, not only did the administrative law judge consider plaintiff's obesity explicitly, he factored it indirectly into his decision as part of the doctor's opinions. <u>Skarbeck,</u> 390 F.3d at 504(declining to remand for explicit consideration of

claimant's obesity where administrative law judge adopted limitations suggested by specialists and reviewing doctors, who were aware of claimant's obesity).  I find that the administrative law judge considered all of plaintiff's impairments including obesity in determining plaintiff's residual functional capacity.

### E. Social Security Ruling 83-20

Plaintiff contends that the administrative law judge erred in not considering Social Security Ruling 83-20 in determining the onset date of plaintiff's disability.  This regulation would be applicable only if the administrative law judge had found plaintiff disabled.  Scheck v. Barnhart, 357 F. 3d 697, 702 (7th Cir. 2004)("SSR 83-20 addresses the situation in which an administrative law judge makes a finding that an individual is disabled as of an application date and the question arises as to whether the disability arose at an earlier time").  The administrative law judge was not required to apply SSR 83-20 because he did not find that plaintiff was disabled.

Nevertheless, the administrative law judge considered the ruling in his decision to determine whether plaintiff had a disability that began in the period from plaintiff's alleged onset date of January 1, 1994 until his last insured date of December 31, 1996.  Without citing to specific evidence in the record, plaintiff argues that after the injuries he sustained in the military, his back condition deteriorated so as to make him disabled in 1994.

20

However, substantial evidence supports the administrative law judge's finding that the medical evidence did not indicate any deterioration of plaintiff's back condition after his 1988 cervical fusion or any significant functional limitations from 1988 through 1996.`

As the administrative law judge noted, the deterioration in plaintiff's condition was caused by the significant traumatic injuries he sustained in 1997 and 2001, not by any slowly progressive impairment that might have been disabling on an earlier date. Plaintiff does not point to any post-1996 evidence that arguably relates back to his condition during the relevant period. In the absence of such evidence, it would be pointless to remand this case for application of Social Security Ruling 83-20.

F. <u>Additional Evidence</u>

Plaintiff argues that he is entitled to remand because the administrative law judge did not consider evidence that he timely submitted to the Office of Hearing and Appeals on August 1, 2006. Plaintiff makes two arguments concerning this evidence. First, he argues that the agency failed to process this evidence according to the agency's procedures. Specifically, plaintiff contends that § 1-2-7-20 of the Hearings, Appeals and Litigation Law Manual (HALLEX), promulgated by the Social Security Administration Office of Disability Adjudication and Review, required the agency to mark this evidence as an exhibit and include it in the file. However, the HALLEX manual is not binding on the agency and has

21

no legal force.  Schweiker v. Hansen, 450 U.S. 785, 789 (1981); Parker for Lamon v. Sullivan, 891 F.2d 185, 190 (7th Cir. 1989).

Second, plaintiff contends that the administrative law judge ignored this significant evidence.  This argument assumes that the administrative law judge actually saw the evidence, but as noted previously, the evidence was not included among the exhibits to the administrative law judge's decision.  The administrative law judge cannot be faulted for failing to consider evidence that, for whatever reason, did not make it into the record.  Eads v. Sec'y of Dept. of Health and Human Services, 983 F.2d 815, 817 (7th Cir. 1993)(correctness of administrative law judge's decision depends on the evidence that was before him).

This is not to suggest that plaintiff has no recourse for the agency's alleged loss of the records.  As plaintiff has done, he can ask the court to remand his case to the agency for consideration of the additional evidence, as authorized by sentence six of § 405(g).  To be entitled to a remand under sentence six of § 405(g), plaintiff must show that "there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  Putting aside the issues of newness and good cause, plaintiff is not entitled to a remand under this provision because the additional evidence he has submitted is not material.  Evidence is "material" if it gives rise to a "reasonable probability" that the commissioner would have reached a different conclusion

22

had the evidence been considered.  Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997). To be material, new evidence must relate to the claimant's condition "during the relevant time period encompassed by the disability application under review."  Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir. 1990).

None of the additional evidence that plaintiff has submitted relates to his condition during the time period from his alleged onset date of January 1, 1994 to December 31, 1996. Plaintiff's 1986 and 1987 MRI scans do not provide evidence of his condition during that time period because he had intervening surgery in 1988 that relieved the cervical compression and markedly improved his symptoms.  The Marshfield Clinic records relate to the years 1997 to 2001, after plaintiff's last insured date.  The evidence of deterioration of plaintiff's condition after the 1997 automobile accident does not relate back to the time period from 1994 to 1996.  Godsey v. Bowen, 832 F. 2d 443, 445 (7th Cir. 1987) (holding that new medical evidence showing that claimant's condition had deteriorated was "immaterial" to claimant's request for review).  Further, there is nothing in the new evidence that contradicts any of the medical evidence in the record that the administrative law judge considered.

Plaintiff contends that the evidence is material because it fills the gap of medical records from 1995 to 2001 to which the administrative law judge referred in his decision. Insofar as plaintiff is contending that the records could change the administrative law judge's

23

credibility determination, this argument is not persuasive.  As noted previously, the gap in the records was only one of several reasons the administrative law judge found plaintiff not credible.

In sum, because there is no reasonable probability that the administrative law judge would have reached a different decision had he considered the additional evidence. Plaintiff's motion for a sentence six remand will be denied.


ORDER

IT IS ORDERED that plaintiff's motion for a sentence six remand is DENIED.

FURTHER, IT IS ORDERED that the decision of defendant Michael Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff James Zoromski's appeal is DISMISSED.  The clerk of court is directed to enter judgment and close this case.

Entered this 4th day of March, 2008.

BY THE COURT:


/s/
_____
BARBARA B. CRABB
District Judge

24